NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NOS. A-1154-24
               A-1155-24

IN THE MATTER OF THE
LESLIE KAREN ROSS TRUST
UNDER THE LAST WILL AND
TESTAMENT OF HARRIET
ROSS, deceased.

_____

Submitted April 14, 2026 – Decided April 23, 2026

Before Judges Firko and Perez Friscia.

On appeal from the Superior Court of New Jersey, Chancery Division, Bergen County, Docket Nos. P-000420-23 and P-000370-24.

Jeffrey Ross, self-represented appellant.

Respondents have not filed a brief.

PER CURIAM

Appellant Jeffrey Ross,[1] self-represented, as the sole vested remainder

beneficiary of the Leslie Karen Ross Trust (Leslie's Trust), under the Last Will

---

[1] Because this matter involves family members with the same surname, we use their first names. We intend no disrespect.

and Testament (Will) of Harriet Ross, appeals from two October 29, 2024 Probate Part orders. In A-1154-24, Jeffrey appeals from the trial court's order denying his motion to reconsider its October 12, 2023 order deeming his subpoenas null and void because they were served under a simultaneously dismissed complaint (first complaint) and order to show cause (OTSC) against Leslie Ross and David Kurzman, as co-trustees of Leslie's Trust.[2] In A-1155-24, Jeffrey appeals from the order granting John F. Fahy's, as the trustee of the Revocable Trust of Leslie K. Ross (LKR Living Trust), motion to dismiss Jeffrey's complaint (second complaint) and OTSC. Having reviewed the record, parties' arguments, and applicable law, we affirm.

I.

These matters relate to three prior appeals involving Harriet's Will, which has been extensively litigated.[3] We summarize the facts relevant to the issues raised in this appeal.

---

[2] On March 31, 2025, we granted in part Jeffrey's motion for leave to file an amended notice of appeal. We restored his appeal solely as to the court's October 29, 2024 order, which denied reconsideration of the October 13, 2023 order.

[3] This matter has a tortured litigation history. In re Est. of Ross (In re Ross I), No. A-0915-23 (App. Div. May 2, 2025); In re Est. of Ross, No. A-3757-20 (App. Div. Jan. 20, 2023), certif. denied, 257 N.J. 414 (2024); In re Est. of Ross, No. A-5237-17 (App. Div. Apr. 3, 2019).

Harriet executed her Will in January 2012. At the time, she had two living adult children, Jeffrey and Leslie, and she named them the primary beneficiaries of her estate. In re Ross I, slip op. at 1. The children survived Harriet's passing in December 2014. Ibid.

Harriet's Will distributed the "rest, residue[,] and remainder of [her] estate . . . to [the] [t]rustees, in trust, . . . to be held in two separate trusts, one . . . for the benefit of L[eslie] . . . , and one . . . for the benefit of J[effrey]." Id. at 2. Under Will provisions 7.4 and 7.6, Jeffrey and Leslie were appointed co-trustees of the created Jeffrey Scott Ross Trust and Leslie's Trust. Provision 5.4 instructs that "[u]pon the death of one of [Harriet's] children, [her] [t]rustees shall assign, transfer[,] and pay over the then principal[,] . . . and any income accrued but undistributed, to the trust created herein for [Harriet's] surviving child to be held as additional assets of the trust for the surviving child." Jeffrey was therefore the beneficiary of any funds remaining in Leslie's Trust if she predeceased him.

In August 2018, "[Carl] Roth was appointed [c]o-[t]rustee of Leslie's [T]rust." Ibid. In June 2021, Leslie created the LKR Living Trust and named John F. Fahy as the successor trustee. She established the LKR Living Trust in California, where she was a resident and domiciled before her passing on March

A-1154-24

26, 2024. The LKR Living Trust, under provision 7.8, dictates that "[a]ll questions concerning the validity, interpretation, and administration of this instrument, including any trusts created under this instrument, shall be governed by the law of the State of California, regardless of the domicile of any trustee or beneficiary." Fahy is a resident of California and at all times has administered the LKR Living Trust there.

In October 2022, Roth was discharged as a co-trustee of Leslie's Trust. Id. at 4. Kurzman was thereafter appointed as the co-trustee of Leslie's Trust. After Leslie and Kurzman moved to terminate Leslie's Trust pursuant to N.J.S.A. 3B:31-30,[4] the court granted the application on September 15, 2023, because there was less than $100,000 in principal remaining and were recurring costs. The application to terminate Leslie's Trust was filed on notice to Jeffrey, the Office of the New Jersey Attorney General (OAG), and the Will's named charitable remainder beneficiaries. After an informal accounting was provided

---

[4] N.J.S.A. 3B:31-30(a) states, "After notice to the qualified beneficiaries, the trustee of a trust consisting of trust property having a total value less than $100,000 may terminate the trust if the trustee concludes that the value of the trust property is insufficient to justify the cost of administration." Further, N.J.S.A. 3B:31-30(c) provides, "Upon termination of a trust under this section, the trustee shall distribute the trust property in a manner consistent with the purposes of the trust."

A-1154-24

to the OAG, it had no objection to termination. Leslie and David later liquidated Leslie's Trust and were discharged as co-trustees on September 15, 2023.

The month prior, in August 2023, Jeffrey had filed his first complaint against Leslie and Kurzman as co-trustees of Leslie's Trust arguing violations of N.J.S.A. 3B:31-67.[5] Jeffrey sought "financial [activity] information" regarding Leslie's Trust, including "monthly . . . statements from the financial companies" that "held . . . [its] assets." Under the action, he issued subpoenas to "Wells Fargo" and the former co-trustee, "Roth," seeking documents related to Leslie's Trust. The subpoenas were issued after the termination of Leslie's Trust and after Leslie and Kurzman were discharged as the co-trustees.

On October 13, 2023, after argument, the court issued an order denying Jeffrey's request for summary relief, dismissing his first complaint with prejudice, and deeming the subpoenas he served in the action "null and void." The court found Leslie's Trust had previously been terminated on September 15, 2023, as there was approximately only $57,000 remaining and were recurring

---

[5] N.J.S.A. 3B:31-67(a) states, "A trustee shall keep the qualified beneficiaries of the trust reasonably informed about the administration of the trust and of the material facts necessary for them to protect their interests" and "[u]nless unreasonable under the circumstances, a trustee shall promptly respond to a beneficiary's request for information related to the administration of a trust."

costs. Regarding Jeffrey's multiple interrelated prior court actions, the court explained Jeffrey continuously "regurgitat[ed] basically" the same arguments against Leslie's Trust, his action "wreak[ed] of other motives," and he partially contributed to Leslie's Trust being "almost fully dissipated."

The court noted there was no merit to Jeffrey's argument that he had the "legal right[] to expect that [he] would be getting the benefit of $900,000 after [the] taxes were paid from that trust and after income was taken, which would not [have] de-value[d] the value of the trust." The court was also unpersuaded by Jeffrey's argument that the OAG had wrongly consented to the termination of Leslie's Trust as evidenced by his referral of a Deputy Attorney General to an "Ethics Office."

After counsel for Leslie and Kurzman requested during argument that the court "address the subpoenas" in its order, the court stated it was not aware of the subpoenas. Later, after the court issued its oral decision dismissing the first complaint, it directed counsel to submit an order for review. The court also explained, if Jeffrey is "going to keep filing things under new docket numbers and then saying this is all new[,]" the record should reflect the court has "made [the] finding[] that it is not." Finally, the court advised Jeffrey of his right to appeal.

6

A-1154-24

In March 2024, Jeffrey filed a notice of appeal and motion for leave to file his appeal as within time of the October 13, 2023 order. He later withdrew those filings.

In June 2024, Jeffrey filed his second complaint against Fahy, seeking documents relating to Leslie's Trust, including tax returns, "any remaining assets," accounting statements, and investment statements. Jeffrey claimed entitlement to the documents "in order to be reasonably informed about [the] past administration" and "all material facts necessary to protect [his] interests . . . since all . . . property [remaining in Leslie's Trust] . . . needed to be transferred from her [trust] to [his] [t]rust under [the] Will." In July 2024, Fahy moved to dismiss Jeffrey's second complaint.

In July 2024, Jeffrey moved to amend the court's October 13, 2023 order deeming his subpoenas null and void. He argued the subpoenas were valid, despite the court's dismissal of his first complaint with prejudice, and they were mistakenly nullified. Jeffrey further argued the court failed to respond to his letters raising the error. While Jeffrey's November 8, 2023 letter acknowledged the court had dismissed his first complaint with prejudice, he maintained the court should nevertheless "eliminate or void" the subpoena provision.

A-1154-24

On October 29, 2024, the court heard argument on Jeffrey's motion to amend the October 13, 2023 order voiding his subpoenas, Fahy's motion to dismiss Jeffrey's second complaint, and a motion to dismiss a third complaint Jeffrey filed.[6] The court permitted Jeffrey to extensively address the issues pertaining to each of the motions.

Regarding the motion to amend and correct the October 13, 2023 order's subpoena provision, Jeffrey argued the court erred in entering the provision as it had acknowledged "not [having] seen the[] subpoenas." Jeffrey further asserted, without citing authority, that he was not subject to the court rules regarding motions for reconsideration as he was asking the court to correct and "amend" the order. Jeffrey contended he "legitimately filed [his] motion 273 days after the order" was entered, because court staff and Surrogate's Office representatives advised him he could obtain a court ruling by a "letter request." He also maintained he was inhibited from "proceed[ing] to file an appeal."

The court denied Jeffrey's motion, determining he failed to establish a reason for reconsidering the provision that the subpoenas were void. After citing legal precedent, the court explained that dissatisfaction with an order does not

---

[6] Jeffrey does not appeal from the dismissal of his third complaint against the LKR Living Trust under P-000478-24, which the court also dismissed with prejudice.

alone warrant reconsideration. Further, the court disagreed with Jeffrey's interpretation of its prior statements made during oral argument. The court explained the subpoenas were void based on the dismissal with prejudice of the first complaint. Regarding the timing of Jeffrey's motion, the court also found denial was appropriate because "it was . . . out of time procedurally."

Regarding the motion to dismiss Jeffrey's second complaint, Fahy argued that the court lacked personal and subject matter jurisdiction. Fahy contended no "nexus" exists between the LKR Living Trust and its "assets" and "any of th[e] litigation" surrounding Leslie's Trust, which was created under Harriet's Will. Fahy represented there was no relationship between the trusts, the court lacked jurisdiction, and Jeffrey was required to bring any action in California. Further, Fahy argued an order should be entered barring Jeffrey's ability to file further claims and that Jeffrey's second complaint was frivolous, actionable, and warranting of an attorney's fee award.

Jeffrey countered that the court had jurisdiction over Fahy because the second complaint was "against [Fahy] personally as a [United States] citizen to simply return New Jersey trust documents" located in Leslie's California "home." Jeffrey maintained the court also had jurisdiction over Fahy because

9

the funds from Leslie's Trust "were transferred to [the] savings and checking accounts for" the LKR Living Trust.

The court granted Fahy's motion to dismiss the second complaint, finding Leslie's Trust was terminated and Jeffrey's request for documents from Fahy was "repackag[ing] the [prior] arguments" and rehashing "the same thing." It stated Jeffrey had the right to appeal but "[n]ot [to] keep . . . coming [back] to th[e] [c]ourt" on the same issues regarding documents from Leslie's Trust that was terminated. The court additionally found dismissal was also warranted because there was neither personal jurisdiction over Fahy nor subject matter jurisdiction over the LKR Living Trust. It stated that the LKR Living Trust "[was] a California trust," Fahy "[was] in California," the LKR Living Trust "[was] subject to the California laws," and litigating against the LKR Living Trust in New Jersey was not appropriate. This appeal followed.

II.

We first address Jeffrey's argument that the court erred in denying his motion to amend the October 13, 2023 order's subpoena provision. Jeffrey argues the court wrongly ordered that his subpoenas were null and void despite his effective service against Wells Fargo and Roth and his right to the information. Jeffrey's contentions are unsupported by the record.

10

We review orders denying reconsideration under Rule 4:49-2 for an abuse of discretion. See AC Ocean Walk, LLC v. Blue Ocean Waters, LLC, 478 N.J. Super. 515, 523 (App. Div. 2024); Granata v. Broderick, 446 N.J. Super. 449, 468 (App. Div. 2016). A court abuses its discretion "when a decision is 'made without a rational explanation, inexplicably departed from established policies, or rested on an impermissible basis.'" Milne v. Goldenberg, 428 N.J. Super. 184, 197 (App. Div. 2012) (quoting Flagg v. Essex Cnty. Prosecutor, 171 N.J. 561, 571 (2002)).

Rule 4:49-2 provides that a party may file a "motion . . . to alter or amend a judgment or final order." Further, the Rule "sets a twenty-day time bar for filing motions to alter or amend 'a judgment or order.'" Lawson v. Dewar, 468 N.J. Super. 128, 133-34 (App. Div. 2021). A trial court should only grant a motion for reconsideration when "1) the [c]ourt has expressed its decision based upon a palpably incorrect or irrational basis, or 2) it is obvious that the [c]ourt either did not consider, or failed to appreciate the significance of probative, competent evidence[,]" or 3) "if a litigant wishes to bring new or additional information to the [c]ourt's attention which it could not have provided on the first application." Cummings v. Bahr, 295 N.J. Super. 374, 384 (App. Div. 1996) (quoting D'Atria v. D'Atria, 242 N.J. Super. 392, 401 (Ch. Div. 1990)).

A-1154-24

As correctly stated by the court, Jeffrey's disagreement with its ruling alone is insufficient to warrant reconsideration and modification of the October 13, 2023 final order. The court accurately explained the dismissal of the first complaint "obviously affected the ability" to subpoena in the action. Thus, it determined once the first complaint was dismissed, the subpoenas were void.

After a review of the record, we discern no abuse of discretion by the court in denying reconsideration. The court properly ordered Jeffrey's subpoenas were null and void as they were served under the simultaneously dismissed first complaint. Rule 1:9-1 provides that "[a] subpoena may be issued by the clerk of the court or by an attorney or party in the name of the clerk" and "[i]t shall state the name of the court and the title of the action." (emphasis added). Further, under Rule 4:10-2(a), "parties may obtain discovery regarding any non-privileged matter that is relevant to the subject of a pending action or is reasonably calculated to lead to the discovery of admissible evidence." In re Liquidation of Integrity Ins. Co., 165 N.J. 75, 82 (2000) (emphasis added). We also agree Jeffrey's motion was untimely under Rule 4:49-2 because he filed the reconsideration motion of the court's October 13, 2023 order well after the twenty-day filing period had expired.

A-1154-24

For these reasons, we affirm the court's October 29, 2024 order under A-1154-24, which denied Jeffrey's motion to amend the October 13, 2023 order's subpoena provision.

## III.

We next address Jeffrey's argument that the court erroneously dismissed his second complaint against Fahy. Jeffrey contends the court had jurisdiction over Fahy because he was "a [United States] citizen," and there was "a direct nexus" to New Jersey. He further argues the court had jurisdiction over Leslie's Trust "since [its] . . . creation in 2018," the requested records "remained under [the court's] jurisdiction" and "were not [Leslie's] personal property," his second complaint "ha[d] nothing to do with the LKR [Living] Trust," and the court confused the LKR Living Trust with Leslie's Trust in its ruling. The record demonstrates the court correctly determined it lacked jurisdiction over Fahy, and Jeffrey's contentions are without merit.

Our review of the trial court's ruling on a motion to dismiss for lack of jurisdiction is de novo. Mastondrea v. Occidental Hotels Mgmt. S.A., 391 N.J. Super. 261, 268 (App. Div. 2007). Pursuant to Rule 4:6-2(b), a defendant may file a "motion to dismiss for lack of personal jurisdiction." Zahl v. Eastland, 465 N.J. Super. 79, 92 (App. Div. 2020). "Appellate review of a ruling on

jurisdiction is plenary because the question of jurisdiction is a question of law." Rippon v. Smigel, 449 N.J. Super. 344, 358 (App. Div. 2017).

"Plaintiff bears the burden of pleading sufficient facts to establish jurisdiction." Dutch Run-Mays Draft, LLC v. Wolf Block, LLP, 450 N.J. Super. 590, 598 (App. Div. 2017). "When a defendant has maintained continuous and systematic activities in the forum state, the defendant is subject to the state's 'general' jurisdiction on any matter, irrespective of its relation to the state." Rippon, 449 N.J. Super. at 358-59 (quoting Lebel v. Everglades Marina, Inc., 115 N.J. 317, 323 (1989)); see also Bayway Refin. Co. v. State Utils., Inc., 333 N.J. Super. 420, 428-29 (App. Div. 2000). "However, when the cause of action arises directly out of a defendant's contacts with the forum state, the state may exercise 'specific' jurisdiction over a defendant who has 'minimum contacts' with the state." Rippon, 449 N.J. Super. at 359 (quoting Lebel, 115 N.J. at 323).

"[C]ourts examine whether a non-resident defendant has 'purposefully avail[ed] itself of the privilege of conducting activities' within the forum, such that the defendant can reasonably anticipate being haled into the forum." Dutch Run-Mays Draft, LLC, 450 N.J. Super. at 599 (quoting Burger King Corp. v. Rudzewicz, 471 U.S. 462 (1985)). After finding sufficient minimum contacts, the court must then determine whether maintaining the lawsuit in the forum state

14

"'does not offend "traditional notions of fair play and substantial justice"' in order to assert personal jurisdiction over the defendant." D.T. v. Archdiocese of Phila., 260 N.J. 27, 32 (2025) (quoting Int'l Shoe Co. v. Washington, 326 U.S. 310, 316 (1945)).

We are satisfied Jeffrey has failed to establish facts supporting personal jurisdiction over Fahy in New Jersey. Jeffrey's argument that Fahy is a "[United States] citizen" and the trustee for the LKR Living Trust does not support jurisdiction. Jeffrey does not dispute the LKR Living Trust was created in California, is governed by California law, and that Fahy resides there. His argument that he was not required to establish Fahy, as the trustee of the LKR Living Trust, had any connection with Leslie's Trust and New Jersey to file a complaint against him is without merit. Fahy has not conducted the minimum necessary activities in New Jersey nor has Jeffrey established a sufficient nexus between Leslie's Trust and the LKR Living Trust.

We note Jeffrey also raises that New Jersey counsel on behalf of the LKR Living Trust and Fahy initiated a "debt collection against [him] due to [a prior] May 21, 2021 [o]rder" awarding Leslie payments from Jeffrey pursuant to a February 2020 settlement. Jeffrey failed to raise this issue before the court in opposition to the motion to dismiss or by way of a motion for reconsideration.

15

We generally decline to consider issues not presented below "when an opportunity for such a presentation [was] available 'unless the questions so raised on appeal concern jurisdiction or matters of great public interest.'" Nieder v. Royal Indem. Ins., 62 N.J. 229, 234 (1973) (quoting Reynolds Offset Co. v. Summer, 58 N.J. Super. 542, 548 (App. Div. 1959)); see also Zaman v. Felton, 219 N.J. 199, 226-27 (2014) (recognizing claims that are not presented to a trial court are inappropriate for consideration on appeal).

We have nevertheless considered Jeffrey's argument on the merits. We discern no support for his argument that the court had jurisdiction over Fahy because he later pursued, on behalf of the LKR Living Trust, monies owed to Leslie. Under the facts he alleges, personal jurisdiction is not established. For these reasons, we are convinced there is no reason to disturb the court's order dismissing Jeffrey's complaint for lack of personal jurisdiction over Fahy.

We also find no merit in Jeffrey's assertions that the court made "irrational claims," had a "tirade," was "biased" and "unethical," and made "cruel and insulting" statements. A review of the record demonstrates otherwise. The court exercised great patience in focusing Jeffrey's arguments to the relevant issues and provided him with ample, uninterrupted time to present his contentions—many of which were repetitive. Moreover, the transcript of the argument shows

the court paused the proceedings to ensure Jeffrey was "all right" and inquired if he needed to "get some water." The court thereafter delivered an oral decision, which provided sufficiently detailed factual findings and legal conclusions. R. 1:7-4(a) (requiring a trial court to make sufficient "find[ings] [of] . . . fact and state [its] conclusions of law"). We, therefore, conclude the court fairly presided over the proceedings and we affirm under A-1155-24 the court's October 29, 2024 order granting Fahy's motion to dismiss Jeffrey's second complaint.

Finally, we note Jeffrey's merits brief focuses on two other appeals he has allegedly filed, which relate to a writ of execution filed against him, based on his failure to comply with a February 2020 settlement entered with Leslie and an attorney, and an information subpoena. These matters are not properly before us, and we, therefore, do not address his arguments. Additionally, to the extent that we have not addressed Jeffrey's other remaining contentions, it is because they lack sufficient merit to be discussed in a written opinion. R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

M.C. Hanley

Clerk of the Appellate Division

A-1154-24